1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

7

PAUL ROSS,

              Plaintiff,

8

9

      v.

10

FRED MEYER STORES, INC.,

              Defendant.

11

Case No. C09-5285 BHS

ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

12
13
14
15
16

        This matter comes before the Court on the motion for summary judgment of

Defendant Fred Meyer Stores, Inc. ("Fred Meyer") to dismiss Plaintiff Paul Ross' ("Ross")

action for wrongful termination.  Dkt 39.  The Court has considered the pleadings filed in

support of and in opposition to the motion, and the remainder of the file, and **GRANTS** the

motion for the reasons discussed herein.

17

## I.  INTRODUCTION AND BACKGROUND

18
19
20
21

        This case arises out of the termination of Ross' employment at Fred Meyer's

Distribution Center ("Center") in Puyallup, Washington.  Ross filed a complaint for

wrongful termination and outrage against Fred Meyer in Pierce County Superior Court.

Fred Meyer removed the matter to this Court based on diversity jurisdiction.

22
23
24
25

        In October 2007, Fred Meyer hired Ross as a probationary order selector (informally

called by Fred Meyer and referred to herein as a "picker") at Fred Meyer's Center located in

Puyallup, Washington.  A picker is given an assignment that consists of an order from one of

26

ORDER - 1

the retail stores for items needed. The picker starts with the first item requested, drives a pallet jack to the location in the warehouse where the ordered item is stored, picks up the item, and places it on the pallet.  The picker then moves on to the next item, and so on, until the order is completed. Once the order is completed, the picker wraps the order in plastic and transports it to the appropriate loading door.

One criteria Fred Meyer uses for evaluating a picker's performance is the measurement of a picker's time in completing the order. Each "pick" job has its own time standard, calculated based upon (among other things) the items being selected, the location in the warehouse of each item, and the number of items to be selected. These standards are built using both industry-wide standards and factors particular to each Center. The union covering the pickers at the Puyallup Center, Teamsters Local 117, has approved the use of these standards and periodically audits them for accuracy.

The time standards are built so that an average person working at a regular pace should be able to complete any given order in the set amount of time, resulting in a score of 100%.  A person taking longer than the calculated time would receive a score of less than 100% on that job, and a person taking less time than the calculated time would receive a score above 100%.

Fred Meyer uses averages of the aggregates of the time scores to monitor the performance of the individual pickers.  If a picker's aggregate average for a week falls below 100%, then the picker receives a write-up notifying him or her of that fact.  If a picker's rolling 26-week average falls below 100%, the picker may be suspended, and if the rolling 26-week average continues to fall below 100%, the picker's employment is terminated.

ORDER - 2

Pursuant to the union contract, the first 1560 hours worked as a picker constitute the probationary period. This period allows Fred Meyer to evaluate a picker's performance, attendance, attitude, etc., prior to the employee becoming fully covered by the union contract and thereafter being terminable only for cause.  During the probationary period, the pickers are at-will employees, and there are no contract limitations on terminating them.  For probationary employees, the first six weeks of their employment is their training time and the averages expected of them are reduced accordingly. Once a probationary picker has completed training, however, he or she is expected to generally be scoring at least the average of 100% each week. Ross was told about this requirement during his new hire orientation, and provided paperwork further explaining how the time standards work.

Fred Meyer's managers monitor a probationary employee's hours.  When the employee's hours reach about 1300, the supervisors working regularly with that employee are asked to recommend whether that employee should be retained past the probationary period.  The Center's Safety Manager (Gary James, an experienced picker) is also asked to provide input.  The final decision is made by the employee's department head (Louis Mendoza), who confirms his decision with the Center Assistant Manager (Tom Davis) and/or the Center Manager (Tom Potter).

Fred Meyer also has an attendance policy under which points are assigned for absences and tardies.  The points are aggregated on a six-month rolling basis; as a new day is added on, the oldest day is dropped out of the aggregated point total.  Ross was instructed on the attendance policy during his new hire orientation.

Under the attendance policy, an employee is assigned four points for all consecutive days' absences for the same reason.  If the employee brings in a doctor's note, he or she is assigned only three points. Every employee gets one "free" absence in any six-month

ORDER - 3

period and those points are not included in their running total.  If an employee (probationary or otherwise) reaches thirteen points, he or she is automatically terminated. Attendance with fewer than thirteen points can be a factor in determining whether an employee meets probationary standards and is retained past their probationary period.

In deciding whether a picker has successfully completed probation and should be retained, the department head and the supervisors consider the person's time standards, performance, attendance, attitude and general conduct.

Ross asserts that Fred Meyer miscalculated his absences during his probationary period, resulting in a negative attendance evaluation.  He admits that he had two absences in January, resulting in the imposition of eight points.  On February 17, 2008, Ross had an additional absence, accruing another four points.  On February 21, 2008, Ross was absent due to a suspension for poor performance.  No points are assessed for absences resulting from suspensions. Ross again missed work on May 11, 12 and 14, 2008.  Ross was initially assessed four points for this absence.  This absence was subsequently attributable to his April 24, 2008, workplace injury that is not subject to point allocation and these points were then not counted.

Despite these absences, Ross asserts that he is entitled to a 100 % attendance record due to his entitlement to earned credit for three months perfect attendance.  This argument is flawed.  The attendance policy provides for the removal of four points for employees who have three months of perfect attendance after being placed in a disciplinary step (incurred four points).  Not only did it appear Ross failed to achieve three months of perfect attendance, even had he achieved such, only four points would be deducted from his attendance score.

ORDER - 4

1     Performance standards are another factor taken into consideration in the

2 determination as to whether to retain a probationary employee.  In addition to his absences,

3 Ross had difficulty in meeting job performance standards.  In February 2008, he was

4 suspended for an ongoing inability to pick at the weekly rate of 100% and the continuing

5 rolling average.  Ross was subsequently given additional training.  At the time of his

6 probationary review, the summary report of his time performances showed a variance

7 off-goal of minus seven points (a score of 93%).  This is considered a substantial variance,

8 and well below what the supervisors look for in a probationary employee.  Ross contends

9 that despite his rolling average, he was meeting performance standards at the end of his

10 probationary period.

11     In June 2008, Ross was up for review of his probationary performance.  Louis

12 Mendoza, the Grocery Department Manager, had previously made his decision not to retain

13 Ross.  Mendoza based his decision on Ross' performance, attendance, and attitude.

14 Although Ross had recently been meeting performance standards, Mendoza felt his overall

15 performance was below that expected of employees and that he had taken a longer period of

16 time to learn the job.  Mendoza was also concerned with Ross' attendance record.

17 Mendoza's decision was confirmed when, as part of the review process, the department

18 supervisors were asked to provide their recommendations and everyone recommended

19 against retaining Ross.

20     On or about May 14, 2008, Ross reported to his supervisors that he had been injured

21 on the job on April 24, 2008, claiming that he suffered a groin injury while lifting product.

22 Ross' claim was accepted as a workplace injury covered by Washington's Industrial

23 Insurance Act, for which he received medical treatment and time loss benefits.  Ross was

24 placed on temporary disability while he received physical therapy and work conditioning.

25

26 ORDER - 5

1    On February 20, 2009, Ross reported back to work and was immediately terminated.  Fred

2    Meyer claims that it had previously decided to terminate Ross' employment for his failure to

3    meet probation standards due to his unsatisfactory performance, attendance, and attitude.

4    Fred Meyer states that Ross had been retained as a probationary employee so that he could

5    complete his rehabilitation that was being provided under his worker's compensation claim.

6         Ross asserts that Fred Meyer retained two other probationary employees, Scott Pena

7    and Scott Sorenson, that did not file workers compensation claims despite suffering on-the-

8    job injuries.  This allegation is refuted by evidence that both Pena and Sorenson in fact filed

9    worker's compensation claims, received benefits, and took time off to recover from their

10   injuries.

11        Ross commenced this action for wrongful termination and outrage.  On July 1, 2010,

12   this Court dismissed his claim for outrage.  Fred Meyer moves for summary judgment on

13   Ross' remaining wrongful termination claims.

14                        **II.  SUMMARY JUDGMENT STANDARDS**

15        Summary judgment is proper only if the pleadings, the discovery and disclosure

16   materials on file, and any affidavits show that there is no genuine issue as to any material

17   fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

18   The moving party is entitled to judgment as a matter of law when the nonmoving party fails

19   to make a sufficient showing on an essential element of a claim in the case on which the

20   nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

21   (1986).  There is no genuine issue of fact for trial where the record, taken as a whole, could

22   not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec. Indus. Co.*

23   *v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific,

24   significant probative evidence, not simply "some metaphysical doubt").  *See also* Fed. R.

25

26   ORDER - 6

1    Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists if there is sufficient

2    evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the

3    differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986);

4    *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

5         The determination of the existence of a material fact is often a close question.  The

6    Court must consider the substantive evidentiary burden that the nonmoving party must meet

7    at trial – e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at

8    254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.  The Court must resolve any factual issues of

9    controversy in favor of the nonmoving party only when the facts specifically attested by that

10   party contradict facts specifically attested by the moving party.  The nonmoving party may

11   not merely state that it will discredit the moving party's evidence at trial, in the hopes that

12   evidence can be developed at trial to support the claim.  *T.W. Elec. Serv., Inc.*, 809 F.2d at

13   630 (relying on *Anderson, supra*).  Conclusory, nonspecific statements in affidavits are not

14   sufficient, and missing facts will not be presumed.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S.

15   871, 888-89 (1990).

16        The plaintiff's ultimate burden in employment discrimination cases is to produce

17   enough evidence for a trier of fact to reasonably conclude that discrimination was a

18   substantial factor for the adverse employment action.  *Hill v. BCTI Income Fund-I*, 144

19   Wn.2d 172, 186-87, 23 P.3d 440 (2001).  A court evaluates the strength of the prima facie

20   case and the proof that the employer's explanation is false, and any other evidence

21   supporting the employer's case.  *Id*. at 186.   If a plaintiff fails to establish a prima facie case

22   or to rebut the defendant's alternative explanation for the adverse action, the defendant is

23   entitled to summary judgment.  *Id*. at 181.  If the evidence could support reasonable

24   inferences either way, the case should go to trial. *Id*. at 186.

25

26   ORDER - 7

### III. WRONGFUL TERMINATION CLAIMS

Although the complaint is not a model of clarity, it appears that Ross is asserting a discrimination claim for wrongful termination based upon disability (RCW 49.60.180) and wrongful termination in retaliation, in violation of public policy for claiming workers compensation.

**A.     Disability Discrimination**

Washington's Law Against Discrimination ("WLAD") protects employees from discrimination based on a disability.  RCW 49.60.030(1).  Under the WLAD, it is unlawful for an employer to discharge any employee because of the presence of any sensory, mental, or physical disability.  RCW 49.60.180(2).  To prove that a defendant is liable for disability discrimination in termination, a plaintiff must first demonstrate a prima facie case: (1) he is disabled; (2) he was discharged; (3) he was doing satisfactory work; and (4) similarly situated persons without a disability were not terminated.  *Hill v. BCTI Income Fund-I*, 144 Wn.2d 172, 181,23 P.3d 440 (2001); *Kirby v. City of Tacoma*, 124 Wn. App. 454, 468, 98 P.3d 827 (2004).  If a plaintiff employee fails to establish a prima facie case of discrimination, the defendant employer is entitled to prompt judgment as a matter of law.  *Hill,* at 181.

For the purposes of this motion, Fred Meyer does not contest the fact of disability, nor do they dispute that Ross was terminated.  Fred Meyer contends that Ross cannot meet the third and fourth elements of his prima facie case.  Fred Meyer asserts that Ross has not established a prima facie case that he was doing satisfactory work, and similarly situated persons without a disability were not terminated.

Fred Meyer further argues that even if Ross is somehow able to establish a prima facie case, they have produced evidence of legitimate nondiscriminatory reasons for the adverse action, and Ross has not established an issue of fact of pretext.

ORDER - 8

1    Once the employer fulfills his burden of production, to create a genuine issue of

2    material fact a plaintiff must satisfy his ultimate burden of persuasion and show that the

3    employer's articulated reasons are a mere pretext for what, in fact, is a discriminatory

4    purpose. *Hill*, at 186.

5        Here Fred Meyer has produced evidence that Ross was terminated due to inadequate

6    performance and substandard attendance.  Ross has not produced sufficient evidence to find

7    that Fred Meyer's asserted justification is false.  See *Hill*, at 186.  A plaintiff must show

8    "specific and significantly probative evidence that the employer's alleged purpose is

9    pretext." *Schuler v. Chronicle Broadcasting Co.*, 793 F.2d 1010, 1011 (9th Cir. 1986); *Kirby*

10   *v. City of Tacoma*, 124 Wn. App. 454, 469 (2004).  Simply disagreeing with an employer's

11   assessment of job performance is not sufficient to demonstrate pretext.  *Parsons v. St.*

12   *Joseph's Hospital*, 70 Wn. App. 804 (1993).  Ross has provided no evidence that his

13   performance was satisfactory beyond that of his own assertions.  There is no evidence of

14   pickers with probationary performance numbers, attitude, and attendance equal to or worse

15   than Ross' numbers, attendance and attitude who were kept past probation and hired as full-

16   time employees.  Further, Ross has not established that other probationary pickers were

17   treated differently.  Although Ross asserts that other probationary employees that suffered

18   on-the-job injuries but did not file workers compensation claims were retained for

19   employment, the facts contradict this assertion.

20       Ross argues that the timing of the termination, specifically its proximity to his return

21   to work in February 2009, provides enough evidence of discrimination to defeat summary

22   judgment.  This coincidence is not proof of causation.  *Anica v. Wal-Mart Stores, Inc.* 120

23   Wn. App. 481, 489 (2004).  Ross' performance and the conditions leading to his termination

24   occurred prior to his injury.  The record demonstrates that Fred Meyer simply allowed Ross

25   to continue his treatment for the injury and receive workers compensation benefits prior to

26   ORDER - 9

1   his formal discharge.  It was only when he was medically released for return to work that his

2   discharge was instituted.

3        Ross has not provided sufficient evidence to establish that his discharge occurred

4   under circumstances that raise a reasonable inference of unlawful discrimination. Therefore,

5   he has not established a prima facie case for disparate treatment disability discrimination.

6   Even were Ross to establish a prima facie case, there is no evidence from which a

7   reasonable jury could conclude that his supervisors' explanations were false or a pretext for

8   his termination.  Ross cannot avoid summary judgment by speculating that the reason given

9   is pretext, but must produce actual and specific facts. Ross has no such evidence.  Summary

10  judgment is appropriate on Ross' disability claim.

11  **B.     Retaliatory Discharge**

12       Ross also claims Fred Meyer discharged him in retaliation for filing a workers'

13  compensation claim.[1]  Under RCW 51.48.025(3), an employee may institute an action

14  against an employer who has discharged the employee in retaliation for pursuing workers'

15  compensation benefits by showing that (1) he exercised the statutory right to pursue

16  workers' benefits under Title 51 RCW or communicated to the employer an intent to do so

17  or exercised any other right under RCW Title 51; (2) he was discharged; and (3) there is a

18  causal connection between the exercise of the legal right and the discharge.  *Wilmot v.*

19  *Kaiser Aluminum & Chem. Corp.*, 118 Wn.2d 46, 54 (1991); *Anica v. Wal-Mart Stores, Inc.*

20  120 Wn. App. 481, 490-91 (2004).

21

22

23       [1]In response to the motion for summary judgment, Ross asserts for the first time a retaliation
    claim based on reporting of safety concerns.  This claim is not contained in Ross' complaint, nor
24  supported by his deposition testimony.  Ross cannot defeat summary judgment by raising new
    claims in response.  *See McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1139 (9th. Cir. 2004);
25  *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292-93 (9th Cir. 2000).

26  ORDER - 10

1   Fred Meyer argues that Ross is precluded from claiming retaliatory discharge for

2   failing to meet a condition precedent of filing a claim with the Director of Labor and

3   Industries.  *See* RCW 51.48.025(2).  This argument was rejected by the Washington

4   Supreme Court in *Wilmot*, wherein the court held RCW 51.48.025(2) is not the exclusive

5   remedy available to an employee alleging wrongful discharge in retaliation for filing a

6   workers compensation claim, and that such an employee may bring a wrongful discharge

7   tort claim independent of the statute.  118 Wn.2d at 51, 56.  *See also Wilson v. City of*

8   *Monroe*,  88 Wn. App. 113, 125 nt.32 (1997); *Johnson v. Safeway Stores, Inc*, 67 Wn. App.

9   10, 12 (1992).  Accordingly, Fred Meyer's argument that Ross may not claim retaliatory

10   discharge is without merit.

11   Notwithstanding the ability to state a claim independent of the statute, Ross,

12   nonetheless, failed  to produce evidence that the workers compensation claim was a cause of

13   his discharge.  Where there is evidence of  satisfactory work performance, the proximity of a

14   discharge from employment to the claim for workers compensation benefits is sufficient to

15   establish a prima facie case of retaliatory discharge.  *Wilmot* at 69; *Anica* at 491.  Here, Ross

16   has failed to produce evidence of satisfactory work performance.

17   Additionally, Fred Meyer has met the burden of production to articulate a legitimate

18   reason for discharge of Ross.  Thus, Ross must show that the stated reasons are a pretext for

19   discrimination, and the pursuit of workers compensation was a substantial factor motivating

20   Fred Meyer's determination to discharge Ross.  *Wilmot* at 73; *Anica* at 492. Ross attempts to

21   establish pretext by contending that similarly situated probationary employees that did not

22   file workers compensation claims for on-the-job injuries were not terminated.  This

23   contention fails.  The evidence shows that the named employees, Scott Sorenson and Scott

24   Pena, did in fact file and receive workers compensation benefits and were retained as

25   employees.  Accordingly, Ross has failed to produce evidence of pretext.

26   ORDER - 11

1

## IV.  CONCLUSION

It is undisputed that every supervisor reviewing Ross' performance recommended against retaining him, while at the same time they recommended retaining other probationary employees who had also had a work place injury and workers compensation benefits and leave.  Ross has not identified a single probationary employee with his performance numbers and his poor attendance, who was retained past probation. He also cannot identify a single supervisor for Fred Meyer who thought he should be kept past probation.  Ross has failed to raise a genuine issue of material fact supporting a prima facie case of disparate or retaliatory discrimination and also failed to produce evidence of pretext in the determination to discharge him.  Fred Meyer is entitled to summary judgment dismissal of all Ross' claims.[2]

## V.  ORDER

Accordingly, it is hereby **ORDERED** that Fred Meyer's Motion for Summary Judgment (Dkt. 39) is **GRANTED** and all of Ross' claims against Fred Meyer are **DISMISSED with prejudice**.

DATED this 20th day of September, 2010.

BENJAMIN H. SETTLE
United States District Judge

---

[2]Ross' response raises a new claim for $718 for underpaid wages. Not only does Ross provide no evidentiary support for such a claim, this claim and allegation also were not included in his complaint.  This claim will not be considered.  *See McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1139 (9th Cir. 2004); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292-93 (9th Cir. 2000).

ORDER - 12